IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America *ex rel.* JONATHAN BARTLETT, | ) ) ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 04 C 4204 ) |
| KENNETH BRILEY, Warden, Stateville Correctional Center, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jonathan Bartlett has petitioned the Court under 28 U.S.C. § 2254 for a writ of habeas corpus. Bartlett was convicted in state court of first degree murder and attempted murder and was sentenced to forty years in prison.[1] The prosecutor in his case made an improper rebuttal argument in which he quantified "proof beyond a reasonable doubt" by comparing it to a partially completed jigsaw puzzle. Under the standard of review that governed habeas corpus cases before 1996, this Court would grant the writ. But under the more deferential standard that now governs, the Court is compelled to conclude that the state appellate court's determination that Bartlett was not deprived of a fair trial was neither contrary to nor an unreasonable application of federal constitutional law. The Court therefore denies Bartlett's petition.

---

[1] Bartlett was also convicted of aggravated discharge of a firearm, but the conviction was reversed on appeal.

1

## Facts

On July 18, 1998, Jose Flores, a member of the "14's" street gang, was approached by Maniac Latin Disciples members Bartlett and Carlos Espinoza outside an apartment building in Elgin, Illinois. According to Flores, they discussed uniting the street gangs in that area. Cesar Benitez, a friend and fellow gang member of Flores, arrived by car and joined the discussion. At some point, things turned sour, and Bartlett pulled out a gun and fired several shots at Benitez and Flores, killing Benitez but missing Flores.

Bartlett and Espinoza were arrested and charged with murder, attempted murder, and aggravated discharge of a firearm. Their cases were severed and they were tried simultaneously, with a jury hearing Bartlett's case and the judge hearing Espinoza's.

Flores testified that the day before the murder, he was playing soccer and drinking beers with friends behind an apartment building at 1114 Ash Drive in Elgin, when Espinoza and another man pulled up in a Chevy Blazer. After inquiring about each others' gang affiliations, Espinoza told Flores he wanted to talk the following day to avoid any fights. Flores testified that the next day as he was leaving the apartment building, he again saw Espinoza, this time with Bartlett. The men discussed the possibility of uniting their gangs. When Benitez arrived on the scene, he asked Bartlett and Espinoza if they were members of the Maniac Latin Disciples, and Espinoza replied that they were.

The arrival of a police car on the scene temporarily broke up the conversation, and the men returned to the apartment building. Flores testified that after the police car left, he saw Bartlett and Espinoza standing by the same Blazer that he had seen Espinoza driving the day before. Benitez then approached the two, with Flores subsequently joining them. Flores knew

Benitez and Espinoza were talking about Espinoza's companion from the previous day, but he could not understand the rest of the conversation because it was in English. Flores testified that he turned away from the group and was facing the street when he heard gunshots. He ducked down and saw Benitez fall. He noticed that Espinoza had gotten into the driver's seat of the Blazer and that Bartlett was in the front passenger seat, pointing a gun at Flores' face through the window, approximately eighteen inches to two feet away. Flores immediately dropped to the ground, falling on top of Benitez. He then heard the gun fire, though he could not recall how many times. Flores testified that neither he nor Benitez was armed.

Flores spoke with a police officer at the scene, and he spoke with officers at the Elgin police station later that night. He testified that although he recognized Bartlett and Benitez in the photographs he was shown by police, he did not immediately tell police they were the shooters, because he was thinking about Benitez's death and was scared.

Ramon Corona, an acquaintance of Benitez, also placed Bartlett and Benitez at the scene of the shooting. Corona testified that at approximately 5:30 p.m. on July 18, he saw Benitez outside of the apartment building arguing with two men he later identified as Bartlett and Espinoza. Corona ran away and admitted that he did not actually see Benitez get shot.

A second eyewitness to the shooting, Reynaldo Morales, testified at Bartlett's trial. Morales lived in an apartment at 1133 Ash Drive, and around 5:30 p.m. on the day of the murder, he was behind his building getting ready to cook-out with his family and neighbors. He testified that he saw a Cadillac and a Blazer pull into the parking lot next to the building. He identified Espinoza as the driver of the Blazer and Bartlett as the driver of the Cadillac. He stated that Espinoza waved the two men over to the Blazer and began arguing with them. According to

3

Morales, Bartlett and Espinoza were standing near the driver's door, approximately three to five feet away from the other two men, when he heard Espinoza tell the two men that they would "settle matters tomorrow at 11:00." As Espinoza repeated these words, Bartlett unfolded his hands, revealing a gun, and began shooting at the two men. Morales testified that Bartlett shot one of the men in the head and chest, and the other man moved to avoid being shot. Espinoza got into the driver's seat of the Blazer, and Bartlett fired four more shots as he went around the Blazer to get in the passenger side. Bartlett fired two more shots as the Blazer drove away. Dr. Joseph Cogan, an assistant medical examiner who testified at trial, confirmed that the autopsy revealed that Benitez had been shot once in the right side of his head and once in the chest at close range.

Morales admitted that he told police officers at the scene that he had not seen the shooting. He asked to be questioned at the police station because he feared gang members in the area. At the police station, he identified Espinoza and Bartlett from photographs. Morales testified that he later moved his family to a new home and was reimbursed over $3000 for the move by the State's Attorney's office.

Bartlett was convicted of first degree murder of Benitez, attempted murder of Flores, and aggravated discharge of a firearm. He was sentenced to concurrent forty year, twenty year, and fifteen year prison terms for these offenses.

On appeal, Bartlett challenged the sufficiency of the evidence and argued that his trial counsel was ineffective, the trial judge had abused his discretion in imposing sentence, and the prosecutor had made improper comments in closing argument. Among other things, Bartlett claimed that the prosecutor misstated the burden of proof by attempting to define and quantify

4

reasonable doubt. During his rebuttal closing argument, the prosecutor argued as follows:

> MR. SHLIFKA (Assistant State's Attorney): Mr. Sheppard has spent a lot of time telling you about how Johnathan Bartlett is cloaked with the presumption of innocence, and he referred to the weighty burden and the heavy burden and all these nice little stories and --
>
> MR. SHEPPARD (Defendant's counsel): Objection, your Honor.
>
> THE COURT: Overruled.
>
> MR. SHLIFKA: Brick walls. Brick walls. Well, let me explain something to you, folks. The burden we have is beyond a reasonable doubt. Not beyond any doubt, not beyond a shadow of a doubt, not beyond all doubt, but beyond a reasonable doubt. And it's not like a brick wall.
>
> MR. SHEPPARD: Objection, your Honor.
>
> THE COURT: Overruled.
>
> MR. SHLIFKA: It's not like a brick wall at all where you have to remove every single brick. Think of it more like a puzzle. Think the Eiffel Tower. You're putting those pieces in. You want to get thirty percent (30%) done. Well, it kind of looks like a tower to me. Let's say you get all the pieces in except ten, twenty, thirty. You're looking at it. My gosh, that's the Eiffel tower. Do you have a doubt, a reasonable doubt? And there's still pieces missing. Beyond a reasonable doubt is the standard. That cloak that Mr. Bartlett walked into this courtroom with through our evidence has been thrown in the garbage.

Tr. 899-900.

The Appellate Court noted that the Illinois Supreme Court has consistently admonished counsel and trial judges to avoid attempting to quantify the standard of proof in criminal cases. The court found, however, that Bartlett had not been "substantially prejudiced by the complained-of remarks, such that absent the remarks the verdict would have been different." *People v. Bartlett*, No. 1-00-3404, slip op. at 28, 32 (Ill. App. Sept. 24, 2002) (citing *People v. Cisewski*, 118 Ill.2d 163, 175, 514 N.E.2d 970, 976 (1987)). The court explained,

> [W]e find that a close reading of the State's comments here does not indicate that

5

> the State improperly attempted to compare the "beyond a reasonable doubt standard" to a 30% completed puzzle. Although the State initially mentioned "30%," it did not directly equate that percentage with its burden of proof. The State, in fact, subsequently equated its burden of proof to a nearly completed puzzle that was only missing a few pieces when directly referring to the "beyond a reasonable doubt" standard. While we agree that the State's analogy, by making the reference to "30%," appears at first glance to be confusing and improper, a reading of the State's entire argument in context here does not support defendant's argument that he was prejudiced by the State's comments, thereby depriving him of a fair trial.

*Id.* at 31-32. The court also observed that the prosecutor had been responding to defense counsel's closing argument, in which he had likened the presumption of innocence to a "brick wall" that the prosecution had failed to dismantle.[2] *Id.* at 29, 31.

The Appellate Court affirmed Bartlett's convictions and sentences for first degree murder and attempted murder but reversed his conviction and vacated his sentence for aggravated discharge of a firearm. Bartlett's petition for leave to appeal to the Illinois Supreme Court and his petition for a writ of certiorari to the United States Supreme Court were both denied.

Bartlett has filed a *pro se* habeas corpus petition with this Court. He contends that the prosecutor improperly quantified the burden of proof and deprived him of a fair trial by misinforming and confusing the jury regarding the level of proof necessary to establish his guilt.

---

[2] Bartlett's counsel argued, in pertinent part:
> His honor will instruct you in the law as he did earlier. He will tell you that the Defendant need not prove anything. Anything. He stood cloaked through the entirety of this trial as to what we call, proudly, the presumption of innocence in a criminal courtroom. Presumption of innocence. So in other words if you hear all the testimony and you have reasonable doubt, he doesn't have to do a thing. The presumption stays with him. Presumption. That means before we start you and you and you and you have to say John Bartlett is an innocent man. He's innocent right now. In my mind he's innocent. It's up to the State to remove the brick mortar wall in front of him which is called the presumption of innocence. Now, if they take away half the wall, and there's still half a wall left, and he stands behind that presumption of innocence, not required to do anything on his own behalf, it's a clear verdict of not guilty. Nobody would dispute that. The State, I'm sure, believes they have removed every brick in that wall. I think that's pure hogwash. I think there's a lot of bricks in that wall.

Tr. 860-61.

6

Bartlett also contends this was a "structural error" that is not subject to harmless error review.

## Discussion

A petitioner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Under the 1996 amendments to 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings only if the state court's decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.* § 2254(d)(1) & (2).

Bartlett contends that the state appellate court's rejection of his claim based on the prosecutor's rebuttal argument was both contrary to and an unreasonable application of Supreme Court precedent. A federal court may grant relief under the former provision if the state court applied a rule different from that set forth in the Supreme Court's cases or decided the case differently than the Supreme Court has done on materially indistinguishable facts. A federal court may grant relief under the latter provision if the state court correctly identified the governing legal principle from Supreme Court decisions but applied it unreasonably. *Bell v. Cone*, 535 U.S. 685 (2002); *Williams v. Taylor*, 529 U.S. 362, 405-10 (2000). "Such application must be objectively unreasonable, which is different from incorrect." *Id.*

The Supreme Court has reviewed claims of improper arguments of prosecutors under a due process standard. In *Darden v. Wainwright*, 477 U.S. 168 (1986), the Court held that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to

7

make the resulting conviction a denial of due process.'" *Id.* at 180 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This standard necessarily requires assessment of an improper argument's "effect on the trial as a whole." *Id.* at 182.

Bartlett contends, however, that under *Cage v. Louisiana*, 498 U.S. 39 (1990), and *Sullivan v. Louisiana*, 508 U.S. 275 (1993), an instruction given that defines reasonable doubt in a way that suggests a higher degree of doubt than the standard actually requires is a "structural error" that requires automatic reversal of a conviction. *Sullivan*, 508 U.S. at 281-82 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1990)). Bartlett argues that this same standard should govern review of a prosecutor's argument that presents the jury with a defective definition of reasonable doubt. This is particularly so, Bartlett contends, in a case like this one, in which the trial judge did not issue a curative instruction and its overruling of defense counsel's objection could lead a jury to conclude that the court agreed with the prosecutor's description.

The Court disagrees. First of all, the Supreme Court has not applied "structural error" analysis to arguments by prosecutors about reasonable doubt–as distinguished from instructions by a court–and thus the Appellate Court's decision cannot have been "contrary to" Supreme Court precedent.

Second, the prosecutor's argument does not qualify as a structural error. The Supreme Court has divided the types of constitutional violations that may occur during the course of criminal proceedings into two categories: trial errors, which "may be quantitatively assessed in the context of other evidence presented," and are amenable to harmless error analysis, and structural defects, which "affec[t] the framework within which the trial proceeds," and require automatic reversal. *Fulminante*, 499 U.S. at 307-08. There is a "strong presumption" that errors

will fall within the former category, and thus errors that are not subject to harmless error analysis "are the exception and not the rule." *Rose v. Clark*, 478 U.S. 570, 578 (1986). Trial errors are errors that occur "during the presentation of the case to the jury," *Fulminante*, 499 U.S. at 291, a category that encompasses a prosecutor's remarks during closing arguments. A prosecutor's comments are capable of being quantitatively assessed in the context of other evidence presented and thus constitute trial error, not a structural defect.

In short, *Sullivan* and *Cage* do not provide the applicable precedent under which to evaluate petitioner's claims. Indeed, the Seventh Circuit has addressed challenges to a prosecutors' attempts to define reasonable doubt under the standard governing other types of claims of prosecutorial misconduct. *See United States v. Anderson*, 303 F.3d 847, 854, 857 (7th Cir. 2002); *United States v. Dominguez*, 835 F.2d 694, 699 (7th Cir. 1987). *See also, United States v. Alex Janows & Company*, 2 F.3d 716, 722-23 (7th Cir. 1993) (employing a harmless error standard, but not specifically identifying the remarks as falling under the category of prosecutorial misconduct). The Court therefore concludes that the Appellate Court's decision was not contrary to *Sullivan* or *Cage*.

The Court must next address whether the Appellate Court's rejection of Bartlett's claim concerning the prosecutor's remarks was contrary to or an unreasonable application of the *Darden v. Wainwright* standard.

Under *Darden*, a court first determines whether the prosecutor's comments were improper and if so analyzes whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden*, 477 U.S. at 181. The Appellate Court did not cite *Darden* and did not quote the standard from that case. But the standard it

9

employed–whether the prosecutor's argument "substantially prejudice[d]" Bartlett, *see Bartlett*, slip op. at 28, and whether Bartlett was "depriv[ed] of a fair trial," *id.* at 32–is the equivalent of the *Darden* standard. And the Appellate Court's consideration of the extent to which the prosecutor's comments were responsive to defense counsel's argument, *see id.* at 31, is an inquiry that *Darden* specifically approves. *Darden*, 477 U.S. at 182. In short, the Appellate Court did not "appl[y] a rule different from the governing law set forth in [the Supreme] Court's cases." *Bell*, 535 U.S. at 686. This Court's review is therefore confined to whether the Appellate Court unreasonably applied *Darden* in Barlett's case.

As we have noted, *Darden* requires a court to assess the prosecutor's comments in light of the record as a whole to determine if they deprived the defendant of a fair trial. *Whitehead v. Cowan*, 263 F.3d 708, 728 (7th Cir. 2001). Six factors assist the court in evaluating whether the defendant was deprived of due process: 1) whether the prosecutor misstated the evidence; 2) whether the remarks implicate specific rights of the accused; 3) whether the defense invited the response; 4) the trial court's instructions; 5) the weight of the evidence against the defendant; and 6) the defendant's opportunity to rebut. *Id.* The factor of greatest import is the weight of evidence against the defendant since "strong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." *Id.* at 729 (quoting *Rodriguez v. Peters*, 63 F.3d 546, 558 (7th Cir. 1995).

Were this Court free to make an independent decision, we would conclude that the prosecutor's comments were sufficiently prejudicial to warrant vacating Bartlett's conviction. The reasonable doubt standard "provides concrete substance for the presumption of innocence" and "[i]s a prime instrument for reducing the risk of convictions resting on factual error." *In re*

*Winship*, 397 U.S. 358, 363 (1970). Given the central role this standard of review plays in ensuring proper administration of our criminal law, and the difficulty of defining the standard with precision, it is no wonder that it is settled law in this Circuit that attorneys should not attempt to define reasonable doubt in their arguments to a jury. *See United States v. Lerch*, 996 F.2d 158, 162 (7th Cir. 1993).

The prosecutor's remarks in this case posed a significant risk that the jury would discount the significance of the prosecution's burden of proof. Close analysis of those comments arguably supports the Appellate Court's conclusion that the prosecutor did not expressly equate the burden of proof with a puzzle that was 30% complete, and that instead the prosecutor equated the burden to a nearly completed puzzle. *Bartlett*, slip op. at 32. But unlike a reviewing court, which has the benefit of reviewing a written record after the fact, the jury in Bartlett's case was ill-equipped to parse the prosecution's comments or conduct a critical analysis as it sat in the jury box listening to the lawyers' closing arguments. In that setting, there was a significant risk that one or more jurors would erroneously believe that proof beyond a reasonable doubt occupied a range between a 30% completed jigsaw puzzle and a puzzle with somewhere between ten and thirty pieces missing. Such confusion was not removed by the trial court's instructions, as those instructions simply stated the standard without defining it. Moreover, defense counsel had no opportunity to rebut the prosecutor's comments after they were made.

The Court may not, however, consider the matter *de novo*. Rather, we are required to assess the case through the lens of § 2254(d) as amended in 1996. Under the law as it now stands, the Court is constrained to conclude that the Appellate Court did not unreasonably apply federal law.

11

Though, as noted earlier, the Appellate Court did not explicitly undertake a *Darden* analysis, it considered the pertinent factors. The court found that a close reading of the prosecutor's argument revealed that he had not suggested that the burden of proof could be compared to a 30% completed puzzle, but rather had equated the burden to a nearly completed puzzle. *Bartlett,* slip op. at 31-32. The court thus effectively determined that the prosecutor had not, in the final analysis, misstated the burden of proof. The court also noted that the trial judge had properly instructed the jury regarding defendant's presumption of innocence. *Id.* at 28. The instruction stated, "The Defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is guilty." Tr. 917.

The Appellate Court also took into account the fact that the prosecutor's comments were made in response to defense counsel's argument, in which counsel drew a questionable analogy between the prosecution's burden and removing bricks from a wall. *See Dominguez,* 835 F.2d at 701 ("Although the invited response doctrine does not make improper statements proper, it puts arguments in context and assists courts in determining whether a statement unfairly prejudices a defendant. It is clear to us that both sides in this case got their best shots in on reasonable doubt and that reversal is not warranted.") (citations omitted). Finally, the Appellate Court noted that the "strong identification evidence" presented against Bartlett during the trial further mitigated any concern that the comments had prejudiced him. *Bartlett,* slip op. at 32.

As the Court has made clear, we disagree with the Appellate Court's conclusion. But our disagreement with the Appellate Court is not enough to render that court's decision *objectively*

12

unreasonable. The Appellate Court's assessment of the impact of the prosecutor's comments on the trial as a whole involved an issue as to which reasonable minds could differ, and, as we have noted, the court considered all the appropriate factors. For these reasons, the standard for granting the writ has not been met. Accordingly, the Court denies Bartlett's petition for a writ of habeas corpus.

## Conclusion

For the reasons stated above, the Court denies Bartlett's petition for a writ of habeas corpus. The Clerk is directed to enter judgment in favor of respondent.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 25, 2005